# FEDERAL DEFENDER SERVICES
# OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Alexander P. Vlisides
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900

Facsimile 608-260-9901

October 19, 2021

Honorable James D. Peterson
United States District Court Chief Judge
120 North Henry Street
Madison, Wisconsin 53703

      Re:   *United States v. David Kruchten*
             Case No. 20-cr-10-jdp

Dear Judge Peterson:

      This is a hard case. No question about it. And it won't get easier during the sentencing hearing, when dozens of victims recount a theme that's echoed throughout the victim impact statements: Kruchten betrayed a lot of people who trusted him and he's deeply, deeply hurt them. There's no getting away from that reality. It's among the reasons this was charged federally and it's among the reasons that the parties have agreed that a sentence of at least 6 years in custody and 20 years of supervised release is appropriate. The government will, of course, ask for more; but even the minimum allowed under the plea is a stiff penalty that reflects what Kruchten did.

      To that end, it's good to start with points everyone agrees with: Dave Kruchten has issues—some deep issues. The psycho-sexual evaluation spells them out in detail. They started *well* after he became a teacher; it started when he was bored with life—he couldn't do the things he liked, like ultra-races and sky diving—so he looked for excitement and indulged in behavior that he shouldn't. However innocuous his first videos were, he quickly progressed to spying on his wife. From there, it went to his family members (even his elderly godmother) and his friends. And, over time, it became a bigger and bigger part of his life.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -2-

     Had the behavior stopped with family and friends, it would be creepy, it would be wrong, and it would be criminal. No question on all three points. And very likely, if the video (or videos) mentioned in paragraph 35 of the PSR were all there was, he'd have been charged in state court and likely received a deferred prosecution agreement. Depending on the victims' wishes, maybe he'd have garnered a felony conviction. But he certainly wouldn't have gone to prison. Either way, he'd still have faced the shame of his family members and friends knowing what he'd done. He also would have certainly lost his job. And, after the fallout, he would have sought help and he'd never have reengaged in this behavior.

     But he didn't get caught with just doing this to his family and friends. He persisted. And over time, he crossed a huge line by involving students. That took this behavior to a place where *much more severe* consequences would follow. Once he did this to students, there would be no deferred prosecution agreement or probationary sentence. It would mean certain prison (in state or federal court), and it would mean there is no real moving on—he'd have to register as a sex offender, *for life.*

     I have spent two paragraphs stating the obvious because I think it's important to acknowledge the facts that matter most. The behavior in the first paragraph (videotaping family and friends in the bathroom) and the second (videotaping students in the bathroom) are identical. In both, it's just a terrible thing to do to another person, sneaking around and surreptitiously videotaping them. It's just wrong. But Kruchten is not the first person to do this—it's actually somewhat common. And when it happens, the appropriate state charge, where this is commonly prosecuted, would be an invasion of privacy charge (a Class A misdemeanor or Class I felony depending on the content) for the behavior in the first paragraph. *See* Wis. Stat. § 942.08(2); *id.* § 948.08(3). For the identical behavior in the second paragraph (but involving minors), the penalties are aggravated: 18 months of initial confinement followed by 18 months extended supervision. *See id*. § 942.08(4) (invasion of privacy statute; maximum term of confinement 18 months); *see also id.* § 942.09(2) (representation depicting nudity statute; maximum term of confinement 18 months). That is, under either situation (whether with friends and family or with minor students), a person who engages in that very creepy, very wrong, and very criminal behavior faces exposure around 18 months of initial confinement—max. The question for this Court is: does the decision to prosecute this federally mandates anything *more* than the 400% increase in penalties that the defense is allowed to ask for under the plea agreement?

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -3-

Obviously, the government and the victims want more than six years—many are asking for twenty, and the government for fifteen. Part of the attraction (or argument) for a sentence beyond six years is that Kruchten's crime is like many others involving people in authority who prey on minors and it is equally intolerable and it must be punished severely. He was a teacher, he put cameras in the bathroom that female students used, that's all that has to be said—send him away for as long as possible. Reducing the case to those points doesn't withstand scrutiny, nor does it accord with the demands of a federal sentencing, where this Court is guided by a strict command for individualized sentencing. That means the Court must consider all the statutory factors, not just the crime's labels; it means the Court must consider not just the offense but the offender; and it means the Court must arrive at a term that is sufficient but not greater than necessary. Doing that means moving beyond stereotypes and labels that are convenient but inaccurate.

Among them is branding Kruchten a predator and arguing that he must have gotten into teaching just to fulfill his sexual deviance, he was harming people all along the way, and everything he did in his career was meant to target children. It's important to remember that this behavior *all* started well *after* Kruchten became a teacher. He's been teaching since 2005, and his first camera wasn't purchased until 2014. *See* PSR ¶ 35, 130. That is, he's not a "predator" whose sexual deviance ran so deep that he stopped working in accounting, got into teaching, and then went on to get his master's degree in education just so he could prey upon kids. Rather, he's a person who was (by all accounts) an excellent friend and teacher who succumbed to an ever-growing obsession that soon overcame and eventually ruined him.

The other mischaracterization that is thrown around about this case is that Kruchten was attracted to children—that he was a pedophile or hebophile—and that's why he did this. His initial actions weren't driven by sexual attraction and he didn't simply target kids—he didn't discriminate in ages or sexes. I think that this point is a difficult one for most to grasp; indeed, at the change of plea there were audible gasps when he said he didn't do this *for the purpose of producing child pornography.* He did this for the rush. By *this* I mean secretly videotaping people. He did *this* to family members and he did *this* to friends; he did *this* to adults and to children; and he did *this* to teenage girls and to teenage boys. That is, Kruchten behavior wasn't driven by some pedophilic need. Rather, his criminal behavior was driven by voyeurism. The sex evaluation is extremely clear on that. Ex. C at 12.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -4-

     To be certain, the investigation focused on the teenage-girl angle and 90% of the evidence in this case (pictures of the cameras in the bathrooms) came from the hundreds of selfies that students took in the bathrooms. Not to generalize, but high school boys aren't known for taking a prolific number of selfies. Despite the lack of photos, we know that Kruchten set up the cameras in boys' rooms and not just the girls' bathroom. One of the cameras found in Minnesota was in the boys' bathroom. While the government insists that the cameras in the boys' rooms were "decoys" that argument makes no sense. Why would he bother with a decoy? It stretches credulity to think that to cast suspicion away from the girls' rooms, he'd plant decoys in the boys' room.

     The more logical conclusion is the one that he offered: he did this to boys and girls. After all, we know that three of the four people captured in the videos that we have were males. PSR ¶ 60. The other was an adult woman in her thirties. *Id.* That is, there is a distinction between simply targeting teenage girls in the hopes of catching some in a state of undress and what he did: target everyone because so much of the lure of this behavior was the "rush" he got from the whole endeavor—the setup, the sneaking, and the video. *See* Ex. C at 14.

     The government attempts to discredit the sex-evaluation at one point noting it should be given little credence, at another that it's a true insight into his personality. But the government can't have it both ways, nor can it (for that matter) ignore that the psycho-sexual exam detects if people are lying or trying to manipulate the test, and Kruchten's was truthful. Ex.C:9 Nor does the government seem to grasp what the sex-evaluation makes clear: this was not an all or nothing thing for Kruchten. His motivations varied and, of course, part of it was sexual; he has never denied that. But it wasn't the end-all-be-all of his behavior.

     There was nuance in his motivations and that shines through in the sex evaluation and Kruchten's honesty in it. The sex evaluation's questions are searching. And in an attempt to be honest, Kruchten would answer with some nuance. That honesty can't be dismissed by plucking out a quote here and there from the evaluation—i.e., that he was only "curious" and just wanted to catch the kids drinking. Of course that wasn't the sole motivator and it passed away over time, but when the evaluator is asking about years of criminal conduct and the motivations that attended it—and the person is being honest—it's never one thing. However Kruchten initially justified his behavior (with the first cameras), that gave way to greater interest in being more intrusive and seeing the students naked. Ex. A at 3–5. He doesn't, in fact, hide from that but embraces it: "I'm not claiming there was zero sexual component in seeing people in their most private

Federal Defender Services
  Of Wisconsin, Inc.

Honorable James D. Peterson
October 19, 2021
Page -5-

moments or that I never found any victims whether my students or friends attractive even if it wasn't my initial motivation. That would be a lie." *Id.* at 6. That is, there's more to Kruchten's behavior than the reductivist absolute that he was solely interested in getting videos of underage girls.

The difference between his actual behavior and the overgeneralized version of his behavior doesn't make what he did right. But it does take his crime and *all* of his behavior *far* outside the realm of what any one would think when they read the headlines. Put differently, this case is not as simple as branding Kruchten a predator and assuming that he got into teaching to target kids and that all of his acts (all the good things he did in life) has to be viewed through the lens of a master manipulator, who would do all he could just to get pictures of minors in the bathroom. If that were the case, then this would be an awfully easy case to grasp and judge.

But that's not this case. And there are four points that the defense anticipates this Court will wrestle with in formulating the appropriate sentence. First, how does this sentence fits with other sex cases in federal court? Second, how should the Court account for the fact that Kruchten is a teacher who abused his position? Third, how should the Court assess his good character and positive social attributes? Fourth, how does this Court achieve parity with the sentence in *United States v. Greil,* the other teacher from Wausau, who engaged in similar conduct and months ago received a sentence of eight-and-a-half years and three years extended supervision. Rather than wait for the sentencing hearing, the defense's best response to each is as follows.

First, in federal court, we can sometimes get lost in the extremely long sentences that individuals receive for sex crimes—some are deserved, others are the product of mandatory minimums. Usually when it comes to cases involving production, there are (again, *usually*) three driving factors: an abiding interest in kids (usually with a collection of child pornography or prior convictions), actual sexual contact that was captured in the videos, or the video or videos were distributed, augmenting the victim's harm. None of that is, however, present here.  There is *no* child pornography on any of his Kruchten's devices; there is absolutely *no* allegation of touching a minor; and there is *no* evidence that he ever kept, let alone shared, these images. Those factors usually demand a stiff sentence yet none are not present here.

Clearly, Kruchten was a voyeur—equally clear is the fact that there *was* a sexual component to this. Getting a picture of his wife or a female friend naked would naturally be arousing. But the sexual component wasn't the sole driver or the main driver in all

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -6-

this. Again, there's no denying he got a rush from all of this, and that part of the rush was that sometimes the images were nude. While that was only part of the overall behavior, it was part of it. *See Oxford English Dictionary* "Peeping Tom" (n. "A person who watches or spies on others, esp. pruriently; spec. a man who obtains sexual pleasure from furtively watching others undress or engage in sexual activity; a voyeur."). But the fact that there was sexual arousal attached to some of this conduct doesn't mean that all of this was driven by a sexual desire for nude images of minors. And he shouldn't be punished as severely as those who target children and have insatiable pedophilic disorders.

Second, the Court is likely wrestling with how to balance (and punish) the fact that Kruchten did this while he was given a position of trust as teacher. Even if Kruchten weren't a teacher, this crime (videotaping minors in the bathroom) is a prison case. In state court, whether he got the full 18 months of incarceration followed by the 18 months extended supervision, or something less is just guesswork. But we know that he's going to prison. Being a teacher and doing this to students probably doesn't mandate anything more than the four-fold increase demanded by the plea agreement. For one thing, the guidelines capture the fact that he was a teacher in a ascribing a 2-level increase. *See* PSR ¶ 77. Whether that's too little can be debated, but under no scenario are we accustomed to thinking of a crime's punishment being quadrupled (or more) because person abused a position of trust.

Third, the Court must balance the government's and victim's call for more prison time against the productive and pro-social person that Kruchten was for so much of his life. Three decades of admirable selfless devotion to his family and community are not wiped out by his crime. Indeed, part of the reason the victim impact statements are so powerful is that the students and parents did love and did respect Kruchten so much and he was such a good teacher.

The fact that he lived for others for so long is among the most important factors that this Court must weigh. And it resonates most in the need to punish and deter him. Kruchten does not show even the slightest hint of being the sort of person that the Court has to worry about reoffending. He lived three decades of a healthy productive life. What's more, his character was so genuine that those who knew him best, have stuck by him despite his crime and the public shame. The letters of support make plain that his friends haven't abandoned him. Instead, they are there supporting him, assuring his success and support when he gets out.

Federal Defender Services
  Of Wisconsin, Inc.

Honorable James D. Peterson
October 19, 2021
Page -7-

There is a lot in this case to consider. It's why the parties are filing these briefs early. Rather getting bogged down in the letters (which the defense has winnowed down to ten) here are some of the quotes and sentiments that those closest to Kruchten provide for the Court.

| Emily | "Dave's love and thoughtfulness is known by all of his family and friends. He is an amazing dad…Dave has meant so much to so many people and I believe with my whole heart that he still has so much good to do." |
|---|---|
| Pastor | "I have also been in weekly phone contact with Dave since his arrest and incarceration, discussing matters of faith and forgiveness, God's grace and free will…We have also as of late, as he anticipates his sentencing, been talking a lot about how he desires to begin the process to set things right." |
| Andrea (Cousin) | "David is a selfless person. He has truly been there for others in their time of need. No matter what he is doing, if you call David, you know that he will be there for you…When I think about how I can best describe David to others, these three adjectives come to mind: caring, selfless, and full of life." |
| Beth (Sister) | "He's also passionate about…helping anyone in his life who is struggling with something and an attentive listener." |
| Peter (Friend) | "During my transition from high school to college I had no place to live and David took me in to live with him during the summer so I could find stability in my life. Those months living with David and his family was just one example of his generosity, caring, and compassion for others. David always had time for others and made sure he went out of his way to make you feel supported and cared about." |
| Jamie (Sister-in-Law) | "One thing about Dave that I learned early on is that he never does anything half way. Whether it be triathlons, genealogy research, teaching or spending time with his family—he is all in. Always a hard worker, he demonstrates commitment and diligence to achieve his goals…Hopefully these stories and memories shape an image of the kind of person Dave is—a hard worker; a fun-loving friends and family man; a loyal, generous |

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -8-

|  | | |
|---|---|---|
|  | brother-in-law, and a dependable rock we have always been able to lean on." |
| Adam (Friend) | "I bring up these memories because I think it's so important to know that Dave comes from a very loving family who cherished their time together, just like mine." |
| Diana (Aunt) | "We have always known him to be loving, caring, compassionate, playful, and even self-sacrificing. He has always shown a great capacity for taking care of others, even at his own expense." |

      The defense recognizes the Court's common rejoinder: everyone has done good things in their life and that this does not wipe away the evil that brings them to federal court. That is, just because someone did something magnanimous on an occasion doesn't mean they get a free pass for sentencing. The defense agrees with that often-stated point but that's not the defense's point with citing Kruchten's decades of prosocial living. The point is not that Kruchten was a good teacher and a good person, so he gets a slap on the wrist—not at all. It's that he has demonstrated decades of good character and selfless devotion to the community and that demonstrated commitment (and all that attends to it) speaks to the fact that a longer term of incarceration isn't needed to accomplish the goals of sentencing—instrumental or moral. To that end, the need to deter Kruchten or keep society safe from him isn't furthered any more with seven years than it is with six; and by the same token, punishing the crime because of moral outrage isn't *more* satisfied with seven years as opposed to six.

      Rather, balancing the offense and the offender, the Court must consider that the sentencing number (months in prison) it arrives at isn't the only component of Kruchten's sentence. The Court can and must consider his pro-social life, along with the fact that he's been in county jail for the past twenty months—an extremely long time. Most of it has been an incredibly hard time, with him contracting COVID, and being in near constant lock-down. Another point to consider is that he's now a sex-offender for life—that's a heavy burden for anyone to bear. And it assures the Court and the community that he won't be able to do this to minors ever again. Finally, there is the fact that he's also receiving twenty years of supervised release. As the Court knows, often a shorter time in prison can be justified when a longer term of supervised release is also imposed. All of which supports the defense's recommended sentence.

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -9-

That brings the defense to the final point that the Court will likely to consider: how does the Court reconcile six years of incarceration with the sentence given in *United States v. Greil*? The Court often cites parity as one of the great drivers of sentencings—a similar crime should not receive radically different sentences just based on the judge. Agreed. And there isn't much that separates Greil and Kruchten, both teachers, both similar conduct, both have outraged minor victims, both were voyeurs who didn't exhibit any other attraction to children. The eight-and-a-half years that Greil received is not far from the defense's recommended sentence and it would not be an unreasonable sentence here.

I would, however, offer this distinguishing fact that will (I hope) militate towards less incarceration than Greil received. In Greil, the Court was hamstrung in the supervised release it could impose. By the nature of the statute, the most supervised release he could receive was three years. And in its sentencing memorandum, the government (rightly) argued that this short period of supervised release meant he needed more in the way of incarceration. *United States v. Greil,* 20CR30 R. 76:12 (noting "he is subject to only three years [supervised release]. This makes a lengthy term of prison even more important to protect the public. Because the Court will be able to monitor the defendant for only three years following his release, the public can only be protected by his incarceration"). Judge Conley, for his part, noted that was a factor he was considering in his sentencing decision and going beyond the defense's request for a six-year sentence. By the same token that less supervision demanded more prison time in Greil, the fact that Kruchten will receive twenty years of supervised release should militate towards a shorter period of incarceration. Indeed, while Greil total sentence accounts of 11.5 years (incarceration and supervision combined), Kruchten's total sentence will be at 26 years (incarceration and supervision combined).

Those are the principal points that I imagine the Court will wrestle with as it reviews the record and tries to determine an appropriate sentence. There is one final point that I need to make because it's stressed in Kruchten's letter and it's echoed in many of the victim impact statements. Why has he been silent and so unremorseful until now. Indeed, he always wished that he could have apologized sooner. Unfortunately, our system is not set up for defendants to quickly show remorse and beg forgiveness from their victims. And it's just as unfortunate that nothing he can say on Friday can be seen as a true apology; given the setting and the stakes, it's all threatens to be viewed as performative. If he doesn't cry, he'll be viewed as callous and remorseless; if he does, he's faking it and is just sad he got caught. But the Court is a shrewd judge of character and can see that this is a man who feels the pain he's caused others and will never repeat this sort of behavior again.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
October 19, 2021
Page -10-


      This is a difficult case to judge and it will be a hard fought hearing on Friday. The victims are all justifiably hurt and angry and want justice. The victim impact statements are all powerful and poignant; they detail the pain that many have suffered because of this. But justice isn't just a visceral request for the maximum possible sentence. Justice lies outside the cry for vengeance and it lies in hewing closely to the statutory commands of sentencing—of punishing not just the offense but the offender. When the Court marches through the instrumental and moral goals of sentencing, the defense submits that a sentence of six years in prison and twenty years of supervised release is sufficient but not greater than necessary.

                                            Sincerely,

                                            */s/ Joseph A. Bugni*

                                            Joseph A. Bugni
                                            Associate Federal Defender